WILLIAM A. POLLOCK v. DAVID W. WHIPPLE.

FILED SEPTEMBER 18, 1895.   No. 5905.

1. **Pleading:** ELECTION AS TO COUNTS: PRACTICE.   Error cannot be predicated on the refusal of a district court to compel the plaintiff to elect on which one of two causes of action set out in his petition he will proceed to trial when the two causes of action are identical.   The remedy of a defendant in such a case is to move the court to strike out one of the causes of action as surplusage.

2. **Sales:** BONA FIDE PURCHASERS.   One who purchases personal property from a conditional vendee, contractee, or lessee in possession thereof, with actual knowledge of the conditions on which his vendor holds possession of such property, is not an innocent purchaser thereof and acquires only such title as his vendor had.

ERROR from the district court of Cedar county.   Tried below before NORRIS, J.

*Barnes & Tyler, H. A. Miller,* and *Wilbur F. Bryant,* for plaintiff in error.

*John Bridenbaugh* and *J. S. Lothrop, contra.*

RAGAN, C.

On December 9, 1885, D. W. Whipple entered into a contract in writing with Sylvester K. Smith and wife in and by which he leased or bailed to them seventeen head of cows and heifers.   By the terms of the contract Smith and wife were to return to Whipple, on the 1st of March, 1890, thirty-four head of cows and heifers.   The contract further provided that Smith and wife should not sell or dispose of any of the cattle or their increase let or bailed to them without the consent of Whipple, and if they did so the contract should terminate and Whipple have authority to

take possession of the cattle.    Mrs. Smith was the daugh-
ter of Whipple, and at the time of the making of this
contract resided on a farm of Whipple's in Cedar county.
Whipple furnished Smith and wife with seventeen head of
cows and heifers, which, with their increase, were kept on
the farm upon which Smith resided.    In the spring of
1889 these cows and heifers and their increase amounted to
about forty head.    About that time Smith made a bill of
sale of all the cattle in his possession to W. A. Pollock in
payment of a debt owing to the latter by Smith, and Pol-
lock took possession of all the cattle on the Smith farm,
and Whipple then brought this suit in replevin in the dis-
trict court of Cedar county against Pollock for said cattle
and their increase.    There was a trial to a jury, with a
verdict and judgment in favor of Whipple, to reverse
which Pollock prosecutes to this court a petition in error.
Of the errors assigned we notice the following:

1. That the court erred in overruling Pollock's motion
to require Whipple to elect on which of the two causes of
action set out in his petition he would proceed to trial.
The petition contains but one cause of action.    It alleges
that Whipple is the owner and entitled to the immediate
possession of certain cattle, describing them, and contains
the usual allegations that the property is wrongfully de-
tained from the possession of the plaintiff by the defend-
ant, to his damage, etc.    The second count or cause of ac-
tion in the petition is identical with the first, except that it
sets out the contract referred to above entered into between
Whipple and Smith and wife by which the cattle were let
or bailed to the latter, and that Pollock had actual knowl-
edge of the contents of this contract before his unlawful
taking possession of the cattle replevied.    Counsel might
have moved the court to strike out of this petition one of
the so called causes of action as surplusage, and had they
done so no doubt the motion would have been sustained.
But the court did not err in refusing to compel Whipple to

elect on which of the two so called causes of action set out in his petition he would proceed to trial.

2. The second assignment is that the court erred in admitting in evidence the contract for the letting or bailing of the cattle between Whipple, and Smith and wife. We do not think the court erred in admitting this contract in evidence. The principal question in this action, as in every other action of replevin, was whether Whipple at the time he brought this suit was entitled to the possession of the property replevied. The contract between him and Smith and wife, by which he let or bailed to the latter the seventeen head of cows and heifers, and in consideration of which they agreed to return to him thirty-four head of cows and heifers, and by the terms of which they agreed that in case they sold or disposed of any of the property that he should be entitled to take possession of the seventeen head of cows and heifers and their increase, was a material link in the chain of evidence necessary to be produced by Whipple to support the allegations of his petition that at the time the suit was brought he was the owner and entitled to the possession of the property replevied.

3. That the court erred in giving instructions 3, 5, 6, and 7 on his own motion. We have examined the instructions assailed far enough to ascertain that one of the instructions complained of was properly given, and as the assignment is that the court erred in giving all the instructions it is accordingly overruled.

4. The fourth assignment is that the court erred in giving instructions 1 and 3 at the request of Whipple. Instruction No. 1 complained of was properly given, and for the reason stated above the assignment cannot be sustained.

5. The fifth assignment is that the court erred in refusing instructions 1, 2, 3, and 4 requested by Pollock. The second instruction complained of is in the following language: "The plaintiff claims title to the property and the right to the possession thereof under and by the terms of

the contract or agreement in evidence herein, signed by Sylvester K. Smith and Mrs. Sylvester K. Smith. And you are instructed as a matter of law that if you find from the evidence that said contract was violated by the parties signing it, plaintiff can only recover so much of the stock in controversy herein as is shown to be a part of the original cattle delivered by the plaintiff to said Smith and wife at the time the said contract was executed. The plaintiff is not entitled to recover the increase, if any, thereof, nor other cattle except the identical animals so delivered to said Smith and wife." By this instruction the court was requested to tell the jury that if Smith and wife had violated their contract of the letting or bailment of the original cattle by selling any of the original cattle or their increase that Whipple could only recover the original cattle let or bailed. We think this an incorrect interpretation of the contract between Whipple and Smith and wife. By the terms of that contract, if Smith and wife, without Whipple's consent, sold or disposed of any of the original cattle or their increase, then Whipple was "to have the power to take possession of the stock." We conclude, therefore, that the court did not err in refusing to give the instruction quoted above, and as the assignment is that the court erred in giving all the instructions mentioned it is overruled.

6. The sixth assignment is that the verdict is not sustained by sufficient evidence. The principal issue litigated at the trial related to the identity of the cattle replevied and the cattle and their increase originally let or bailed by Whipple to Smith and wife. The evidence on this issue was conflicting, but it sustained the finding of the jury that the cattle replevied were the original cattle and their increase let or bailed by Whipple to Smith and wife. Some attempt was made at the trial to place Pollock in the position of a purchaser for value without notice, but this was a signal failure. The evidence discloses beyond all question that Pollock had actual knowledge of the existence and the con-

tents of the contract between Whipple and Smith and wife, by which the latter had possession of the said seventeen head of cows and heifers and their increase. Indeed, it appears from Pollock's own evidence that he had the contract in his possession prior to the time he took the bill of sale from Smith under which he claims title to the cattle in controversy. He seems to have held this contract as collateral security for a debt which Smith owed him. Pollock does not then come within the protection afforded by the statute to innocent purchasers of personal property from a conditional vendee, contractee, or lessee thereof. Smith and wife had possession of these cattle, but they did not have title to them, and they could convey to Pollock no greater title than they themselves possessed. The verdict and judgment rendered in this case are amply supported by the evidence and the judgment of the district court is

AFFIRMED.