FRANK PIPAN, Respondent, v. ÆTNA INSURANCE COM-
PANY, a Corporation, Appellant.

(235 N. W. 719.)

Opinion filed March 17, 1931.   Rehearing denied April 20, 1931.

*Holt, Frame & Nilles,* for appellant.

*Jacobsen & Murray,* for respondent.

BIRDZELL, J. This is an action upon a policy of fire insurance. Plaintiff had judgment in the court below and the defendant appeals. The policy upon which the action is brought is the one mentioned in two previous appeals to this court in actions brought by Antonia Pipan, the wife of the present plaintiff, and the property insured is the same as there alleged to have belonged to her. See Pipan v. Ætna Ins. Co. 55 N. D. 585, 214 N. W. 901; 58 N. D. 435, 226 N. W. 498. The complaint in the present action alleges the issuance of the policy to the plaintiff, Frank Pipan. It alleges his ownership of the property and contains a paragraph which may be regarded as explanatory of the former litigation. This paragraph alleges that the plaintiff fully and completely informed the defendant's agent as to the status and ownership of the property insured; that he informed defendant's agent the record title of both the real and personal property was in Antonia Pipan; that the plaintiff then believed Antonia Pipan was the owner and so informed defendant's agent; that in the litigation in which Antonia Pipan sought to recover it was finally adjudicated that she was not at all times the absolute and unconditional owner of the property insured; that she was denied recovery. (Reference to the last appeal of her case in 58 North Dakota will show that the findings of the district court in granting the defendant's motion for judgment notwithstanding the verdict are to the effect that the property involved was the property of the present plaintiff, Frank Pipan, and not the property of Antonia Pipan.) The complaint then alleges the destruction of the insured property by fire, the value of the property, the adjustment of the loss and non-payment. The defendant's amended answer consists of a general denial, coupled with five further defenses. (1) It specifically denies that the plaintiff was the owner of the property. (2) It alleges that the plaintiff was not a party to the suit brought by Antonia Pipan and specifically denies that it was adjudicated in said suit that the plaintiff was at all times the owner of the property and denies that the defendant is now estopped to dispute the plaintiff's ownership. (3) It alleges and relies upon the provision of the policy which declares the same to be void if the interest of the insured be other than unconditional and sole ownership; also, it relies upon the provision for ownership in fee simple and against incumbrances. (4) It sets up the provision against misrepresentation of

material facts and circumstances, requiring a true statement of the interest of the insured and providing that fraud or false swearing either before or after the loss shall have the effect of rendering the policy void, and it sets up the facts which it is claimed make these provisions applicable and the policy void. (5) It pleads the policy provision concerning the steps required of the insured following the loss and alleges the failure of the plaintiff to comply therewith.

The plaintiff was the only witness who testified at the trial. He testified concerning the issuance of the policy to him, to his ownership of the property and to the other facts going to make out a prima facie case. Upon cross-examination he was confronted with the testimony which he had given as a witness for the plaintiff in the suit of Antonia Pipan against the same defendant, wherein he had testified that the property belonged to Antonia Pipan. In explanation of that testimony he offered merely the fact that notwithstanding such testimony it had been judicially determined that the property belonged to him and that his present testimony was based upon such judicial determination. There was also introduced in evidence over the objection of the defendant the answers it had interposed in the suit by Antonia Pipan, which alleged, in substance, that Frank Pipan and not she was the owner of the property.

Upon this appeal the appellant advances six propositions in support of its contention that the judgment is erroneous. It is first argued that the evidence is insufficient to support the verdict of the jury in that the plaintiff has not sustained the burden of proving his ownership. He testified that he owned the property. It was brought out upon cross-examination that he had deeded the real property to his wife by warranty deed and transferred the personalty by bill of sale; that in the proof of loss submitted he had made an affidavit that his wife was the owner of the property and had testified upon three different trials to that effect. The facts are that in all of the previous litigation which had for its aim the recovery of the insurance upon the property destroyed, the question of the ownership of the property—that is, as to whether it was owned by Antonia Pipan or Frank Pipan—was hotly contested. It was never questioned, either by this or the former plaintiff, that the property had been the subject of deed and bill of sale between them, but the bona fides of the transaction was attacked by the

defendant who always contended that the transfers were merely colorable. This contention was well enough substantiated to result in affirmative findings. See Pipan v. Ætna Ins. Co. 58 N. D. 435, 440, 226 N. W. 498, 500. We do not approve of the witness's apparent change of front on this question, but it does not follow that the court would be justified in penalizing him to the extent of depriving him of insurance to which he might otherwise be entitled because his testimony does not conform to a judicial conception of frankness and probity. Common experience teaches that many persons believe a warranty deed and a bill of sale adequate to convey property rights regardless of all other considerations; consequently, one who has thus attempted to convey his property might feel warranted in swearing that it belonged to the grantee. At any rate, reluctant as we are to sanction the conflicting evidence of the plaintiff in this case, we believe that his present testimony, received as it was in light of his former testimony, is sufficient to present a question of fact for the consideration of the·jury as to his ownership of the property.

It is next contended that the plaintiff was guilty of fraud and false swearing within the provision of the policy which voids it for such, whether such fraud and false swearing in a matter relating to the insurance was before or after the loss. It is said that if Pipan's testimony in this case is true, his testimony and affidavit in the previous cases are necessarily false, and that, since they cannot be reconciled, the record shows him to have been guilty of such false swearing within the policy provision as to void it. It must be borne in mind in considering this contention that the present plaintiff has throughout this litigation testified that he told Berget, the local agent from whom the policy was obtained, that the property belonged to his wife and that she desired insurance thereon, that Berget examined the property and informed Pipan that he would deliver the policy in accordance with the understanding. So, if his testimony given in the former litigation were true, the company was not deceived by anything he said or did. Antonia Pipan asked for reformation of the policy in accordance with the understanding which Frank Pipan testified to as existing between himself and the defendant's agent. But reformation was denied not because of an attempt to deceive or defraud the company, but because the trial court placed greater credence upon the testimony offered by the defend-

ant which disputed Pipan's version than in the testimony of Pipan. Hence, there was lacking in the view of the trial court the element of mutuality of mistake, which alone would have justified reformation. See Pipan v. Ætna Ins. Co. 55 N. D. 585, 214 N. W. 901. In short, Pipan's testimony at the former trials and his affidavit, Exhibit 17, consistently present the view that he was acting as agent for his wife in procuring the policy of insurance upon the property as her property and that the policy was mistakenly issued in his name. Neither the fact that the trial court in one of the former cases found that there was no mutual mistake, nor the fact that the court found the property to be in reality his, necessarily forces the conclusion that he was guilty of fraud or false swearing. So far as there being apparent inconsistency between the testimony upon the former trials and the testimony upon this trial, we can not say that it might not be reasonably explained by a layman's conception of the efficacy of a deed and bill of sale to transfer ownership as hereinabove pointed out. Here, again, we are of the opinion that the evidence does not so conclusively point to fraud and false swearing that reasonable minds must necessarily infer it from the evidence. Rather, we are of the opinion that it was a question for the jury to determine on the whole evidence.

It is next argued that the court erred in receiving in evidence Exhibits 100 and 101. These exhibits are answers filed in the suit of Antonia Pipan against the present defendant in which are contained allegations that the policy was issued at the request of Frank Pipan "and that he was and is the owner of said property." The answers were verified upon information and belief by the attorney for the defendant.

Counsel for the appellant recognize the rule that an admission contained in a pleading in one action may be received in evidence against the pleader on the trial of another action. But they contend that the better authorities recognize an exception to the rule which would exclude such an admission where made in a pleading prepared by the attorney for the party unless the statement be affirmatively connected with the party himself. 22 C. J. 335. In the instant case the record shows that the statements in the exhibits objected to, to the effect that Frank Pipan was the owner of the property, were statements designed to create a vital issue in the suit in which they were filed between the

plaintiff in that suit and the present defendant, that the issue was tried and findings of fact made thereon in favor of the defendant. The sole purpose of the exception to the general rule in support of which counsel argue is to protect a client from being adversely affected by the mere emanations of counsel. The reason for the exception cannot exist where a case has been successfully contested on the specific issue. This alone is sufficient to affirmatively connect the party with the statements of ultimate fact contained in the exhibits objected to. Indeed, it is difficult to perceive how a litigant can be any more effectually connected with a statement in the pleading than by showing that a judgment was rendered in the action based in part at least upon a favorable finding upon the specific issue tendered. In these circumstances, therefore, it matters little whether the pleading was verified by the attorney or by some other agent of the corporation.

It is next contended that the court erred in permitting the plaintiff to introduce evidence pertaining to compromise and settlement. The record shows that during the examination of the plaintiff he identified certain exhibits which purport to embrace an itemized statement of the plaintiff's loss made in his own handwriting a few days after the fire and given to an agent of the insurance company; and that at the time these exhibits were given to the agent they talked about the loss. The purported object of the testimony concerning the exhibits and the conversation with reference to the loss was to show waiver on the part of the company of other formal proofs of loss. In that connection the witness was permitted to give the following answer: "Mr. Allan (the agent or adjuster) he offered me settlement in Mr. O'Connell's office, it was about six hundred dollars." The examination continued as follows: "By the Court: He is asking you for the conversation. Ques. What did he say about six hundred? Ans. To make settlement he offered me six hundred. Ques. What did you say? A. I said I don't know about that. Ques. Tell all that was said. Ans. I had to see my wife anyhow, after that he said he would not pay anything at all after he find out by Mr. O'Connell's that the policy was made in my name instead of my wife's name. Ques. He said he would not pay at all? Ans. Said he would not pay at all. Ques. That is what Allan said? Ans. Yes."

Afterward there was a motion to strike out the evidence of the wit-

ness as to the offer of settlement and the court struck it out. We think it would have been better practice for the court then and there to have instructed the jury to disregard this testimony as the court was requested to do and to have given a cautionary instruction thereon at the appropriate time. It does not appear, however, that such an instruction was requested, as a part of the charge to the jury. The other evidence makes it plain that any such offer was soon withdrawn and the reason for the withdrawal was given. On the whole we are of the opinion that any error in the original admission of this evidence cannot be said to have operated prejudicially.

It is contended that the insured cannot recover for the reason that he had no insurable interest in the property. The insured testified directly that he was the owner of the property and explained his testimony as hereinabove pointed out. We are of the opinion that the record contains ample evidence that the plaintiff had an insurable interest in the property at the time of the loss.

Finding no error prejudicial to the defendant, it follows that the judgment appealed from must be affirmed. It is so ordered.

CHRISTIANSON, Ch. J., and BURKE and NUESSLE, JJ., and SWENSON, Dist. J., concur.

BURR, J., being disqualified, did not participate; Hon. P. G. SWENSON, Judge of the First Judicial District, sitting in his stead.